UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| VERSUS | * | NO. 23-2305 |
| SLH2021 S.A., ET AL. | * | SECTION "I" (2) |

**ORDER AND REASONS**

Before me is a Motion to Quash Subpoena Duces Tecum and for Protective Order Limiting Scope of Discovery filed by Defendants Prive Shipping Denizcilik Ticaret A.S. ("Prive") and Petro Plus General Trading, LLC ("Petrol Plus"). ECF No. 15. Given the need for expeditious discovery as previously recognized, this Court issued an expediting briefing schedule. ECF Nos. 10, 18. The Government timely filed an Opposition Memorandum, and Defendants timely filed a Reply Memorandum. ECF Nos. 23, 29. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary.

Having considered the record, submissions and arguments of counsel, and applicable law, Defendants' Motion to Quash Subpoena Duces Tecum and for Protective Order Limiting Scope of Discovery (ECF No. 15) is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

**I.     BACKGROUND**

The Government filed a Verified Complaint on June 30, 2023 alleging that Defendants[1] breached a Security Agreement that they entered into with the U.S. Coast Guard to secure the release of the PS DREAM, which was being held pending an investigation for suspected

---

[1] Defendant Petro Plus General Trading (Petro Plus) is alleged to be the disponent owner of the Motor Tanker PS DREAM through the execution of a bareboat charter agreement with offices in Dubai, United Arab Emirates. ECF No. 1 ¶ 8 & n.1. Defendant Prive Shipping Denizcilik Ticaret A.S. (Prive Shipping) is the alleged operator of PS DREAM with offices in Istanbul, Turkey. *Id.* ¶ 9.

1

environmental crimes.  ECF No. 1 ¶¶ 1, 20-24.  To obtain clearance to depart, the Coast Guard requested that Defendants post a $2 million bond and agree to certain other obligations.  *Id*. ¶ 26; ECF No. 1-1.  After entering into the Security Agreement dated March 6, 2023,[2] the vessel was allowed to depart.  ECF Nos. 1 ¶¶ 2, 26, 1-1 at 15-16.  Owner and Operator appointed K&L Gates, LLP as agent for service related to the alleged violations, but then terminated K&L Gates and appointed Liskow & Lewis to serve in its place.  *Id*. ¶ 34, 36 (first No. 36).

The Security Agreement prohibited retaliation against any crew member as a result of his cooperation and required payment of crew members' salaries, room and board, and health care costs.  *Id*. ¶¶ 30-32.  Of the PS DREAM's 23 crew members, 17 were asked to remain in the United States to assist with the investigation, one of whom was repatriated.  *Id*. ¶ 28.  Three other crew members were allowed to return home temporarily for urgent family matters; upon their return, Defendants refused to pay their salaries, per diem, hotel and health care.  *Id*. ¶¶ 29, 44-47.  The Government alleges that Defendants have failed to pay the crew members their full salaries in a timely manner, reduced their per diem rates without explanation, housed them in squalid conditions, and failed to provide medical treatment as necessary.  *Id*. ¶¶ 35-43.

The Government seeks a declaration that Defendants are in material breach of the Security Agreement and an order compelling full compliance or alternatively attaching the bond and entering a judgment in the full amount such that the bond may be liquidated and deposited into the court registry.  *Id*. at 16-18, First and Second Prayer for Relief.

## II.   **THE PENDING MOTION**

Despite the parties' extensive discussion of the merits, this discovery motion is not the proper avenue address substantive disputes regarding the Government's authority under the Act to

---

[2] Though the complaint indicates a March 26, 2023 date of execution, the agreement itself reflects that the parties signed same on March 6, 2023.

Prevent Pollution from Ships, 33 U.S.C. §§ 1901-15, or the merits of Plaintiff's allegations regarding untimely and/or inadequate pay, housing, medical care or treatment of crewmembers. The limited issue before the court at this time is the discovery dispute raised by the Rule 30(b)(6) notices and related subpoenas duces tecum.

The Government issued two Rule 30(b)(6) Notices and Subpoenas Duces Tecum. ECF Nos. 15-1, 15-2. Petro Plus seeks a stay of all discovery pending resolution of its Rule 12 motion to dismiss on the basis that Petro Plus is not responsible for any of the obligations allegedly breached. ECF No. 15-3 at 1 & n.1, 3, 7-8.[3] Both Defendants argue that the subpoenas duces tecum should be quashed because they are improper under Rule 45 and seek to circumvent Rule 34, the Rule 30(b)(6) notices improperly locate the depositions in the Eastern District of Louisiana rather than at the deponent's principal place of business, and, except for the first topic in the Prive deposition notice (seeking information about hotel accommodations, salary and per diem payments, and health care), the requests seek information that is not relevant to any claim or defense; rather, the requests constitute either a fishing expedition to find a deep pocket to indict or an effort to conduct post-judgment asset discovery before judgment. *Id*. at 1-2, 7, 10-14.

In Opposition, the Government concedes that the documents are more appropriately sought pursuant to Rule 34 and thus issued Rule 34 Requests for Production on August 7, 2023. ECF No. 23 at 2, 19-20; ECF No. 23-1. It disagrees, however, that discovery of any party should be stayed, that the depositions must be taken at Defendants' principal places of business, or that the information regarding corporate structure and assets is improper; it also disputes the assertion that the Government is on a fishing expedition because it is unhappy with the $2 million bond. ECF No. 23 at 2-3, 13-14. The Government notes that Petro Plus is based in the UAE, which is not a

---

[3] Defendants also attack the speed at which the Government has proceeded with its criminal investigation and argue that prior reports of alleged breaches have been found unsubstantiated. *Id*. at 3-6.

party to the Hague Convention or any other treaty for service.[4]  *Id*. at 14.  It also argues that the presumptive rule that a deposition should be located in the defendant's principal place of business does not apply in this case where defendants freely sailed a vessel into the United States and then entered into a security agreement with the government, a primary purpose of which was to ensure the availability of witnesses to testify regarding the alleged environmental crimes and which agreement designated this forum as the proper location for resolution of any disputes, and where those home countries impose burdensome requirements and delays on depositions.  *Id*. at 14-19.

The Government further argues that its Topics 2 through 5 fall within the proper scope of discovery under Rule 26 because these inquiries relate to potential alter ego liability.  *Id*. at 5-6 (arguing that Prive, Petro Plus, and the vessel owner SLH2021 S.A. are related through common ownership, subsidiaries, parent companies or beneficial owners).  Further, the inquiry is directed to discerning whether the alleged failure to satisfy obligations to crewmembers results from lack of resources or some other improper reason, presumably retaliation for cooperating with the investigation.  *Id*. at 12-13, 20.  The Government also argues that questions regarding the alleged sale of the vessel and any funds generated from same are directly relevant to the vessel's ongoing obligations to the crewmembers and how same may be satisfied.  Thus, it argues, the requests are not pre-judgment asset discovery, but rather, seek information to discern the reason for the alleged breach of contract, which is relevant to the breach of contract claim asserted herein.  *Id*.

In Reply, Defendants argue that the reason for the alleged non-payment is not relevant to any element of the Government's breach of contract claim and that the $2 million bond is in place

---

[4] Neither the UAE nor the Dubai International Financial Centre is a party to the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters, opened for signature, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444; Signator Status as of June 23, 2023 available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=82.  Even for signators, the Hague Convention is not the exclusive means for conducting discovery.  *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 539 (1987).

4

to cover the obligations.  ECF No. 29 at 3.  Defendants reiterate their arguments for a discovery stay as to Prive and that their depositions should take place in their home countries.  *Id.* at 3-4, 5-7.  Defendants state that they do not regularly travel for business to the United States, and the ongoing environmental crimes investigation distinguishes this case from *Water Quality*.[5]  *Id*. at 3-5.  Defendants also suggest that the Government proceed via remote deposition.  *Id*. at 5.

## III. APPLICABLE LAW AND ANALYSIS

### A. Stay of Discovery Pending Resolution of Motion to Dismiss

No federal or local rule, statute, or binding case law applicable in this case automatically stays discovery pending a ruling on a motion to dismiss.[6]  Nor is a stay of discovery permitted merely because defendant believes it will prevail on its motion to dismiss: "[H]ad the Federal Rules contemplated that a motion to dismiss under FED. R. CIV. P. 12(b)(6) would stay discovery the Rules would contain a provision to that effect."[7]

A stay while motions are pending is the exception rather than the rule.[8]  That said, a trial court is vested with broad discretion regarding discovery,[9] and that includes the discretion to exercise its authority to stay discovery pending resolution of dispositive motions.[10]  Given the

---

[5] *Water Quality Ins. Syndicate v. First Bank of Nigeria PLC*, No. 09-3751, 2011 WL 13202906 (E.D. La. May 5, 2011).
[6] *See, e.g., Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 14-257, 2014 WL 1976867, at *2 (N.D. Tex. May 15, 2014) ("[M]otion to dismiss does not automatically stay discovery . . . until the motion is resolved.") (citation omitted); *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.* No. 08-774, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) (declining to stay discovery merely because the defendant believes it will prevail on its motion to dismiss or because defendant objects to certain document requests).
[7] *Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017).
[8] *Notariano v. Tangipahoa Par. Sch. Bd.*, No. 16-17832, 2018 WL 3844882, at *2 (E.D. La. Aug. 13, 2018) (citation omitted); *Griffin v. Am. Zurich Ins. Co.*, No. 14-2470, 2015 WL 11019132, at *2 (staying discovery while a motion to dismiss is pending "is the exception rather than the rule.").
[9] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citation omitted); *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (stating that plaintiff's right to discovery before a ruling on a motion for summary judgment "is not unlimited and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by [the party] to withstand a Rule 56(e) motion for summary judgment.") (quoting *Williamson v. U.S. Dept. of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987) (internal citation omitted)).
[10] *Brown v. DFS Servs., L.L.C.*, 434 F. App'x 347, 351–52 (5th Cir. 2011); *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011) (quoting *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987)).

court's broad discretion, "[n]o categorical rule is appropriate; rather each case should be considered based on its unique facts and context."[11] In determining whether a stay of discovery is appropriate, courts are to balance any harm produced by a stay against the possibility that a motion to dismiss would be granted.[12]

As a matter of federal procedure, a request to stay discovery must be considered a motion for protective order under FED. R. CIV. P. 26(c)(1):[13] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). A protective order may forbid discovery or specify terms for discovery. *Id.* 26(c)(1)(A)–(B). Thus, the Court has the discretion to stay discovery "for good cause shown."[14] Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance, which contemplates a "'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"[15]

Movants have not established good cause justifying a stay of discovery pending resolution of the motion to dismiss. Indeed, given the issues raised (i.e., the timely funding of room, board and medical care for crewmembers remaining in this country during an investigation of alleged environmental crimes), the treatment accorded crewmembers as wards of admiralty whose rights

---

[11] *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (quotation and citations omitted).
[12] *Your Preferred Printer, LLC v. United Wholesale, LLC,* No. 11-2954, 2012 WL 2190853 (E.D. La. June 14, 2012) (citing *Dresser v. MEBA Medical and Benefits Plan*, No. 08–2662, 2008 WL 2705584 (E.D. La. July 10, 2008)).
[13] *Landry*, 901 F.2d at 435.
[14] *Escareno*, 2014 WL 1976867, at *1 (quoting FED. R. CIV. P. 26(c)(1)) (citing *Landry,* 901 F.2d at 436).
[15] *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *see also United States v. Talco Contractors, Inc*., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

court's broad discretion, "[n]o categorical rule is appropriate; rather each case should be considered based on its unique facts and context."[11] In determining whether a stay of discovery is appropriate, courts are to balance any harm produced by a stay against the possibility that a motion to dismiss would be granted.[12]

As a matter of federal procedure, a request to stay discovery must be considered a motion for protective order under FED. R. CIV. P. 26(c)(1):[13] "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). A protective order may forbid discovery or specify terms for discovery. *Id.* 26(c)(1)(A)–(B). Thus, the Court has the discretion to stay discovery "for good cause shown."[14] Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance, which contemplates a "'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"[15]

Movants have not established good cause justifying a stay of discovery pending resolution of the motion to dismiss. Indeed, given the issues raised (i.e., the timely funding of room, board and medical care for crewmembers remaining in this country during an investigation of alleged environmental crimes), the treatment accorded crewmembers as wards of admiralty whose rights

---

[11] *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) (quotation and citations omitted).
[12] *Your Preferred Printer, LLC v. United Wholesale, LLC,* No. 11-2954, 2012 WL 2190853 (E.D. La. June 14, 2012) (citing *Dresser v. MEBA Medical and Benefits Plan*, No. 08–2662, 2008 WL 2705584 (E.D. La. July 10, 2008)).
[13] *Landry*, 901 F.2d at 435.
[14] *Escareno*, 2014 WL 1976867, at *1 (quoting FED. R. CIV. P. 26(c)(1)) (citing *Landry,* 901 F.2d at 436).
[15] *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); *see also United States v. Talco Contractors, Inc*., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

federal courts are bound to protect,[16] and the concerns expressed by the crewmembers' home governments,[17] a stay of discovery pending resolution of the motion to dismiss is not appropriate.

### B. Procedural and Substantive Objections to the Subpoenas

The Government has withdrawn its subpoenas and issued Rule 34 Requests for Production. ECF No. 23-1. Accordingly, Movants' objections based on improper service and improper use of Rule 45 to avoid the time delays specified by Rule 34 are now moot. In the event that the government desires to obtain responses in less than 30 days, it must file a motion to shorten the response period in accordance with Rule 34(b)[18] and establish "good cause" for same.[19]

### C. Location of Deposition

Rule 30(b)(1) of the Federal Rules of Civil Procedure provides that "[a] party who wants to depose a person by oral questions . . . must state the time and place of the deposition." This generally means that the party noticing the deposition may choose the deposition's location.[20] Although the party noticing the deposition ordinarily selects the location for the deposition to take

---

[16] *See, e.g., Marriner v. Talos Petroleum, LLC*, 576 F. Supp. 3d 412, 418 (E.D. La. 2021) (noting that seamen are traditionally deemed a ward of admiralty entitled to "special solicitude") (citing *Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc*., 95 F.3d 400, 404 (6th Cir. 1996)).; *see also Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1017 (5th Cir. 2015) (noting seamen have long been treated as wards of admiralty) (citing *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971)); *Steverson v. GlobalSantaFe Corp*., 508 F.3d 300, 303 (5th Cir. 2007) (noting courts' duty to "jealously protect" seaman's rights) (citing *Karim v. Finch Shipping Co*., 374 F.3d 302, 310 (5th Cir. 2004)).
[17] ECF No. 23 at 11.
[18] *Angela Ganter, LLC v. Dufur*, No. 20-231, 2021 WL 2698439, at *3 (N.D. Tex. Mar. 19, 2021) (indicating the court will shorten the response period in light of pending hearing).
[19] *Stockade Cos., LLC & Stockade Franchising, LP v. Kelly Rest. Group, LLC*, 17-143, 2017 WL 2635285, at *2 (W.D. Tex. June 19, 2017) (quoting *Greenthal v. Joyce,* No. 16-41, 2016 WL 362312, at * 1 (S.D. Tex. Jan. 29, 2016)); *United Biologics, LLC v. Am. Acad. of Allergy*, 14-35, 2014 WL 12637937, at *2 (W.D. Tex. Mar. 20, 2014) (citation omitted); *ELargo Holdings, LLC v. Doe-68.105.146.38*, 318 F.R.D. 58, 61 & n.21 (M.D. La. 2016) (collecting cases); *Grae v. Alamo City Motorplex, LLC*, No. 18-664, 2018 WL 4169309, at *3 (W.D. Tex. July 2, 2018) (citing *Stockade*, 2017 WL 2635285, at *2 (quoting *Greenthal*, 2016 WL 362312, at * 1)); *St. Louis Grp., Inc. v. Metals & Additives Corp., Inc*., 275 F.R.D. 236, 240 (S.D. Tex. 2011).
[20] *Marquette Transp. Co. Gulf-Inland, L.L.C. v. Navigation Mar. Bulgarea*, No. 19-10927, 2020 WL 9396494, at *1 (E.D. La. Feb. 19, 2020) (citing 8A C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2112 at 523).

place,[21] the deposition is presumed to occur at the location of the residence of an individual or at the corporation's principal place of business, especially when the corporation is the defendant, unless the interests of justice require otherwise.[22] While courts have treated this "presumption" with varying degrees of deference, all agree that it may be overcome by a showing that "peculiar" circumstances that favor depositions at a different location.[23]

While some courts have required the Rule 30(b)(6) depositions of foreign corporate defendants to be located in the companies' home countries, other courts have reached the opposite conclusion.[24] Indeed, "[c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially when the deposition site is the forum most convenient to all parties and that which best serves the general interests of judicial economy."[25] Exceptions to the general rule are often made to compel a foreign corporation's agent to appear for

---

[21] *Reyes v. Cooper Tire & Rubber Co.*, No. 09-3680, 2010 WL 2038046, at *1 (E.D. La. May 20, 2010 (citing 8A C. WRIGHT, A. MILLER & R. MARCUS, FED. PRAC. AND PROC. § 2112, at 527–28 (3d ed. 2010)); *see also Celebration Church, Inc. v. United Nat'l Ins. Co.*, 2015 WL 13532831, at *2 (E.D. La. Dec. 15, 2015) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Dwelly v. Yamaha Motor Corp.*, 214 F.R.D. 537, 541 (D. Minn. 2003)).

[22] *Marquette Transp.*, 2020 WL 9396494, at *1 (citations omitted); *Salter,* 593 F.2d at 651; *Dwelly,*, 214 F.R.D. at 541; *Celebration Church,* 2015 WL 13532831, at *2; *see also Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y. 1997) (noting that "the presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other") (citing *Mill–Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989))).

[23] *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 466 (N.D. Ill. 2007) (authorizing deposition in Chicago rather that Japan) (citing *Six West Retail Acquisition v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y.2001).

[24] *Id.* (citing *West v. Velo Enter. Co.*, No. 13-24, 2014 WL 12480008, at *2 (W.D. Tex. June 9, 2004); *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 07-468, 2008 WL 4663568, at *3-4 (E.D. Tex. Oct. 21, 2008); *Mediatek, Inc. v. Sanyo Elec. Co.*, No. 05-323, 2006 WL 5709449, at *2 (E.D. Tex. Aug. 9, 2006)); *see also Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358 (7th Cir. 1985) (deposition would be held in either forum district or New York rather than defendant's principal place of business in Greece); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 292 F.R.D. 19 (D.D.C. 2013) (deposition would proceed in the United States rather than corporate defendant's principal place of business near Mexico City); *Fausto v. Credigy Services Corp.*, 251 F.R.D. 427 (N.D. Cal. 2008) (deposition would proceed in the United States rather than Brazil when there was possibility that it would be deemed illegal for American lawyers to take deposition in Brazil); *New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460 (N.D. Ill. 2007) (depositions would take place in Chicago rather than defendant's principal place of business in Japan); *Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333 (N.D. Ind. 2000) (Rule 30(b)(6) depositions would occur in Illinois or Indiana because proceeding in principal place of business in Japan would compromise the court's authority to resolve discovery disputes and raise sovereignty issues).

[25] *Custom Form*, 196 F.R.D. at 338.

deposition on American soil when the foreign corporation does business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery.[26]

The plaintiff bears the burden to show sufficient circumstances to overcome the presumption that a defendant's corporate representative should be deposed at its principal place of business.[27] When a corporation objects to a deposition being taken at a place other than its principal place of business, the objection should be sustained under Rule 26(c) unless there are unusual or peculiar circumstances which justify such an inconvenience to the corporation.[28] Although the Fifth Circuit has not indicated what constitutes "peculiar circumstances," cases suggest the circumstances must be in some way unique or distinctive, but need not be extraordinary.[29]

The Court has broad discretion to determine the appropriate location for a deposition when a dispute arises,[30] and it considers a number of factors in the analysis, including whether:

1. counsel for the parties are located in the forum district;

2. the deposing party seeks to depose only one corporate representative;

3. the corporation chooses a corporate representative that resides outside the location of the principal place of business and the forum district;

4. significant discovery disputes may arise, which may necessitate resolution by the forum court; and

---

[26] *Water Quality Ins. Syndicate v. First Bank of Nigeria PLC*, No. 09-3751, 2011 WL 13202906, at *4 (E.D. La. May 5, 2011) (citations omitted).
[27] *Tailift USA, Inc. v. Tailift Co.*, No. 03-196, 2004 WL 722244, at *2 (N.D. Tex. Mar. 26, 2004) (Ramirez, M.J.) (citing *Salter*, 593 F.2d at 652 (finding no peculiar circumstances to overcome the presumption)).
[28] *See Salter,* 593 F.2d at 651 (5th Cir. 1979); *Asevedo v. NBCUniversal Media, L.L.C.*, No. 12-2005, 2013 WL 3155206 (E.D. La. June 19, 2013); *see also Petroplex Int'l, LLC v. St. James Par.*, 15-140, 2016 WL 362402 (E.D. La. Jan 28, 2016); *Celebration Church*, 2015 WL 13532831, at *2 (citing *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 382 (M.D.N.C.1988) (citing 8A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2112, at 403 (1970))).
[29] *See In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 473 n.13 (E.D. Va. 2010).
[30] *Berthelot v. Andreas Fahl Medizintechnik-Vertrieb GmbH*, No. 17-2140, 2018 WL 1251657 (E.D. La. Mar. 12, 2018) (citing *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 368 (N.D. Tex. 2013)); *Marquette Transp.*, 2020 WL 9396494, at *1 (citations omitted); *Birkland v. Courtyards Guest House*, No. 11-0349, 2011 WL 4738649, at *2 (E.D. La. Oct., 7, 2011); *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992).

5. the nature of the claim and the parties' relationship such that an appropriate adjustment of the equities favors a deposition site in the forum district.[31]

Numerous additional factors are identified in the jurisprudence,[32] with the more significant factors being whether the time, expense, and inconvenience of travel presents a special hardship for the deponent[33] and the ability of the court to intervene should disputes arise.[34]

Defendants rely on the presumption, argue that no unusual circumstances exist to justify holding the depositions in the United States, and object to sending any representative onto U.S. soil. ECF No. 15-3 at 9. The Government, in contrast, argues that it has rebutted the presumptive deposition location by establishing peculiar circumstances justify the depositions here, citing to: (1) Defendants' voluntary entry of the M/T PS DREAM in the United States' waters and the Port of New Orleans as well as their execution of an Agreement on Security with a primary purpose of ensuring the maintenance of the crew witnesses during the investigation (ECF No. 23 at 17); (2) the unacceptable delay of between two to six months for a deposition in Turkey due to the required procedures involved in sending the request to the Turkish Central Authority which eventually must assign the request to a Turkish judge who may or may not be granted the deposition request (*id.* at 18); (3) the absence of any provisions for the taking of witness evidence for use in another jurisdiction in the UAE Code of Civil Procedure (*id.* at 19); and (4) the U.S. Department of State's warning to U.S. citizens about traveling in the Gulf and Arabian Peninsula (*id.*).

Although the Government's counsel is outside of this district, Defendants' counsel is based in New Orleans. Further, given that this Court has been called upon twice to address discovery

---

[31] *See Salter*, 593 F.2d at 651-52; *Berthelot*, 2018 WL 1251657, *1 (citations omitted).
[32] *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 609-10 (N.D. Fla. 2019) (listing 32 factors for consideration).
[33] *New Medium Techs*, 242 F.R.D. at 466 (citing *Afram Export*, 772 F.2d at 1365; *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005)).
[34] *Id.* (citing *Custom Form*, 196 F.R.D. at 336; *In re Honda Am. Motor Co., Inc. Dealership Relations Litig.*, 168 F.R.D. 535, 538 (D.Md.1996)).

disputes in this barely five-week old case, the need for court intervention during the deposition appears high. With Dubai's 9-hour time difference and Turkey's 8-hour time difference, locating the depositions at Defendants' principal places of business renders it virtually impossible for this Court to intervene should any issues arise during the depositions. Although the parties have not yet identified the deponents designated to address the Rule 30(b)(6) topics, there is no suggestion that the time, expense, and inconvenience of travel would present a special hardship to Defendants. Further, both the UAE and Turkey are subject to State Department Level 2 travel advisories recommending increased caution for travel to those areas.[35] Finally, considering the unique nature of the claims at issue in this case and the crewmembers' interests in the issues surrounding the prompt payment of their salaries, room, board and medical expenses, locating the depositions outside of the Defendants' home countries is appropriate in this case.

### D. Scope of Discovery

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[36] This broader scope is necessary given the nature

---

[35] https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Turkey.html; https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Turkey.html
[36] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

of litigation, where determinations of relevance for discovery purposes are made well in advance of trial. Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[37] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[38] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[39] If relevance is in doubt, the court should be permissive in allowing discovery.[40]

Rule 26's advisory committee comments make clear that the parties and the court have a collective responsibility to ensure that discovery is proportional. The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." FED. R. CIV. P. 26 advisory committee's notes to 2015 amendment. "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

Although facts about the financial status of a party are generally not discoverable before obtaining a judgment against the party,[41] such discovery is allowed when relevant to any claim or

---

[37] *Id.* n.5 (citation and quotation omitted).
[38] *Id*. (citations omitted).
[39] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[40] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'r, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987) (internal quotations omitted)).
[41] *F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (noting that a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered); *Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, Misc. No. 01-3791, 2002 WL 1837855, at *1 (E.D. La. Aug. 8, 2002) (rejecting pre-judgment asset discovery) (citing FED. RULE CIV. P. 26(b)(2) Advisory Committee's Note, 1970 amendments; and 8 WRIGHT, MILLER AND MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2010 (2d ed.1994)).

defense and proportionate to the needs of the case.[42]  For instance, pre-judgment discovery of a party's assets is commonly allowed as relevant where there is a claim for punitive damages,[43] alter ego,[44] or pre-judgment attachment.[45]

Defendants object to Topics 2-5 of Plaintiff's Rule 30(b)(6) notice and related document requests, summarized as:

- discovery regarding Defendants' viability as a going concern;
- information regarding Defendants' assets and corporate structure;
- information about the bond posted in this matter;
- information regarding co-defendant SLH2021 S.A.'s sale of the PS DREAM.[46]

Defendants do not argue that the Government's Rule 30(b)(6) notices fail to specify the areas of inquiry with sufficient specificity.  Rather, they argue that, with one exception, the deposition topics and document requests do not seek relevant information.  ECF No. 15-3 at 2, 10-11.  In response, the Government argues that corporate structure discovery is relevant to alter ego or shared liability and asset discovery is relevant to discern the reasons for the alleged breach, i.e., to discern whether non-payment is due to inability to pay or for some other improper reason

---

[42] *See, e.g., Liebmann v. Goden*, 629 F. Supp. 3d 314, 331 (D. Md. 2022) (noting that discovery into a defendant's assets or ability to satisfy a judgment is appropriate post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(2), but not pre-judgment), *aff'd sub nom. Rullan v. Goden*, No. 22-2099, 2023 WL 4787463 (4th Cir. July 27, 2023); *Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17- 35, 2017 WL 7693390, at *3 (W.D. Ky. Dec. 12, 2017) (quoting *Dickson v. National Maintenance & Repair of Kentucky, Inc.*, No. 08-8, 2011 WL 2610195, at *2 (W.D. Ky. July 1, 2011)) (stating that Rule 26 ordinarily "will not permit the discovery of facts concerning a defendant's financial status or ability to satisfy a judgment, such matters are not relevant, and cannot lead to the discovery of admissible evidence"); *see also In re Classicstar Mare Lease Litig.*, MDL No. 1877, 2009 WL 1313311, at *3 (E.D. Ky. May 12, 2009) (finding that present financial condition and location of assets was not discoverable prior to judgment and was not a proper focus of prejudgment discovery under Rule 26); *Equinox Gallery Ltd. v. Dorfman*, No. 17-0230, 2018 WL 637764, at *1 (S.D.N.Y. Jan. 22, 2018) (citation & internal quotation marks omitted).
[43] *Jackson v. Wilson Welding Serv., Inc.*, No. 10-2843, 2011 WL 5024360, at *2 n.2 (E.D. La. Oct. 20, 2011) (recognizing propriety of financial worth discovery based on punitive damages claim) (citations omitted); *see also Wade v. Sharinn & Lipshie, P.C.*, No. 07-2838, 2009 WL 37521, at *1 (E.D.N.Y. Jan. 7, 2009) (permitting pretrial disclosure of financial information relevant to a determination of punitive damages); *Gersh v. Anglin*, No. 17-50, 2021 WL 461570, at *2 (D. Mont. Feb. 9, 2021) (noting that pre-judgment asset discovery is proper when complaint alleges malice and seeks punitive damages).
[44] *See, e.g., Mack Energy Co. v. Red Stick Energy, L.L.C.*, No. 16-1696, 2019 WL 3403369 (W.D. La. July 26, 2019).
[45] *See, e.g., Equinox Gallery*, 2018 WL 637764, at *2 (listing cases permitting pre-judgment asset discovery).
[46] ECF No. 15-3 at 10.

(presumably in retaliation for assisting in the investigation). ECF No. 23 at 12-13, 20; ECF No. 1-1 ¶ 2 at pp. 7, ll. 138-145 (prohibiting retaliation).

While Defendants argue the information is sought simply as premature post-judgment asset discovery, the Government's desire to demonstrate that alleged failures to pay were due to reasons other than inability to pay would be relevant to a claimed breach of the anti-retaliation provision of the agreement. As such, Defendants have not demonstrated that the information sought regarding corporate structure, common ownership, and financial ability to pay could have "no possible relevance" to any claim in this case, particularly given the broad scope or relevance for discovery purposes.

Discovery regarding the source of funds for the posted bond and current ownership of the released vessel, however, do not appear to have any relevance to any claim or defense in this case. Accordingly, such discovery falls outside of the bounds of Rule 26.

## IV.    CONCLUSION

A stay of discovery is not appropriate in this case, and accordingly, discovery will proceed expeditiously. The Government has established peculiar circumstances justifying holding the Rule 30(b)(6) depositions outside of the Defendants' home countries. The parties are directed to attempt to agree on a location and/or remote process for the depositions. In the absence of such an agreement, the depositions shall be taken in New Orleans, Louisiana. With regard to the topics of discovery, the Government may seek discovery regarding corporate structure, common ownership, and financial ability to pay as same could be relevant to this matter, but discovery regarding the posted bond and vessel ownership fall outside of Rule 26. Accordingly,

IT IS ORDERED that the Motion to Quash Subpoena Duces Tecum and for Protective Order Limiting Scope of Discovery filed by Defendants Prive Shipping Denizcilik Ticaret A.S.

and Petro Plus General Trading, LLC (ECF No. 15) is GRANTED IN PART AND DENIED IN PART as stated herein.

New Orleans, Louisiana, this 10th day of August, 2023.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE